We'll start with Jones v. Treacy. Good morning Mr. Rowe. Good afternoon Your Honor. Good afternoon. Excuse me, I didn't mean to correct you. No, you should correct me. I got the time right for once. May it please the court, I'm pleased to be here today with two students who are participants in the Duquesne University School of Law Federal Litigation Clinic. They are Jordan Winslow and Amy McCrossin. And we presented a motion to the court for their admission pursuant to the student practice rules. It was granted. Thank you Your Honor. And with that I'll turn the mic over to Ms. Winslow. Thank you. Good afternoon Ms. Winslow. Good afternoon. And may it please the court. As Mr. Rowe has introduced, I'd like to address the issues of pleading standards as they apply to Mr. Jones. Would you like to save any time for rebuttal? At this time I'd like to reserve two minutes for rebuttal. Thank you. We are here today on an appeal from a grant of summary judgment against Appellant Tarif Jones. This is a case regarding a pro se mentally ill incarcerated litigant who is subjected to pornographic videos of inappropriate sexual conduct that resulted in harm in the form of depression, shame, and an attempted suicide by Mr. Jones.  First, Mr. Jones adequately pled a claim for violations under the Eighth Amendment and should not be barred from bringing such claim under the theory of inhumane conditions of confinement. And second, as Ms. McCrossin will address, the sufficient record evidence and genuine issues of material fact remaining, summary judgment was inappropriate. In his pro se complaint, Mr. Jones explicitly alleged a claim for violations under the Eighth Amendment. It was later, with aid of counsel, he was able to articulate this theory under the inhumane conditions of confinement. What must be pled when you're pursuing inhumane conditions of confinement? Well, for inhumane conditions of confinement, Mr. Jones would have had to allege facts in his complaint that show he was objectively harmed and there was the appellees had a subjective awareness of the substantial risk of harm. So they were aware of the risk, correct? Yes, aware of the substantial risk of harm that could be imposed on Mr. Jones by showing him this graphic pornography. Where does that pled? Well, when looking at his complaint altogether with the correct deference, Mr. Jones alleges in detail that he was forced to watch these pornographic videos against his will. This happened on multiple occasions and he was able to articulate detailed descriptions of what happened in each occurrence and further that what he endured during those occurrences led to impacting him negatively mentally to the point of attempted harm in the form of a suicide. He was also involuntarily committed for psychological treatment after his recovery from the hospital. But where does he plead that the guards knew of this risk? Well, as Ms. McCrossin will be able to further address, Mr. Jones was housed in the Divisionary Treatment Unit, the DTU, which he refers to as G-Block and there's also other names. But this is a mental health unit in the prison and as she will explain further, that his presence in that housing assignment put them on notice that he was a mental susceptible mentally ill inmate and that showing him this pornography had a substantial risk of harming him. So the fact that he failed to mention this claim in his complaint does not bar his claim altogether if when looking at his complaint giving that there was he pled enough to rise to liability for this theory. Further, it was addressed as... From the time counsel was appointed until the summary judgment motions were filed, they were about nine months. Why didn't Mr. Jones just amend his complaint to more specifically plead that claim? Well, we are working on the position that it wasn't necessary since Mr. Jones' complaint gave rise to liability under such a theory with the pro se deference given and... But does the pro se deference carry over after he has counsel? Well, looking just at the complaint, there wasn't a requirement to amend it if it was adequate for this theory of liability. So... He should not be barred because he didn't allege it initially and that's what should be looked at. Furthermore, Mr. Jones' claims are not barred by the Prison Grievance Center as mentioned by police. They incorrectly state under which procedures Mr. Jones was subjected to submit his grievances to. Since they were sexual in nature, they're reviewed in accordance with the Prison Rape Elimination Act and that triggers... It's an alternative procedure and he doesn't have to... He's not required to follow the traditional grievance procedures. He alleged his... The allegations of sexual abuse by the COs to a prison counselor after a DOC investigation ensued where they found these pornographic videos in a locked cabinet in the office where Mr. Jones said they would be and only the COs had access to that locked cabinet. Mr. Jones was able to recite scenes from these videos showing that he did have intense knowledge of what was on them and following that investigation, there was disciplinary conferences where the DOC found the COs violated prison policy and Officers Jenkins and Officer Terese was dismissed from employment altogether. And further, they were on notice of an Eighth Amendment violation shown through their individual answers to Mr. Jones' complaint. They all... You are asserting that he properly pled the conditions of confinement, correct? Yes. I see my time is ending. May I finish your question? Yes, that's what we're asserting, that when you look at the complaint and the facts that he alleged with specificity, they give rise to liability under the theory of incoming conditions of confinement. Okay, so I could ask your co-counsel about the argument as it relates to the sexual assault. Yes, she'll be able to further describe the elements related. Thank you. Thank you. Good afternoon, Ms. McCrossin. Good afternoon, Your Honors, and may it please the Court. Like Mr. Rowe mentioned, my name is Amy McCrossin and I will be discussing why Appellant Sharif Jones has identified sufficient record evidence to support his Eighth Amendment claim with respect to his conditions of confinement. This case is about protecting mentally ill inmates and the corrections officer's abuse of power by repeatedly exposing Mr. Jones to graphic pornographic materials, ultimately culminating in his attempted suicide. And so Appellant asks that this Court vacate the District Court's order granting the corrections officer's motion for summary judgment. Inhumane conditions of confinement are in fact subject to scrutiny under the Eighth Amendment, and Farmer v. Brennan establishes the standard in determining whether prison officials have violated a prisoner's Eighth Amendment rights. Ms. McCrossin, under Eighth Amendment jurisprudence, isn't there a difference and a distinction between a condition of confinement claim and a sexual assault claim? There is, Your Honor. Now, your co-counsel, Ailey, argued how Mr. Jones properly alleged the conditions of confinement claim. Do you likewise argue that there is a sexual assault claim here or is the sexual assault claim a subset of the condition of confinement claim? Here, the issue is the conditions of his confinement, and Appellant asserts that he has been repeatedly exposed to graphic pornographic materials and only brings the Eighth Amendment violation claim with respect to his conditions of his confinement. So the sexual assault claim is not an issue here. Okay. All right. And Mr. Jones has pled sufficient record evidence to show that his reasonable fact-finder, when looking at the facts in light most favorable to Mr. Jones, could find an Eighth Amendment violation here. But under the conditions of confinement, doesn't he have to plea, or not he, but isn't it required when you're bringing this sort of a claim to at least allege that the jailers, the prison officials, knew of the risk? That's right, Your Honor. Is that pled? It's not pled in his complaint, Your Honor, but there's sufficient record evidence to support it. And here, the client, Mr. Jones, is mentally ill, and so with respect to amending his complaint, it is very difficult for counsel to distinguish fact from fantasy here, but after a sufficient discovery process, the record sufficiently shows that Mr. Jones has there is sufficient record evidence to show an Eighth Amendment violation with respect to Mr. Jones. And in terms of knowledge, there's pieces of record evidence here that indicate the corrections officers did have knowledge of his status as a mentally ill inmate, and that because he is, in fact, mentally ill, he is a particularly vulnerable inmate, and it's obvious that exposing a particularly vulnerable inmate to pornographic materials would be objectively harmful. The There's several pieces. The first is that corrections officers escorted psychological staff to and from Mr. Jones' cell repeatedly, and so they knew that he had a mental health condition. The corrections officers also knew that the DTU, the place where Mr. Jones was housed, is commonly known as the mental health unit, and so regardless of whether they knew his specific diagnosis, the corrections officers did, in fact, know that he was a mentally ill inmate, and that his the risk of harm to him, because he is particularly vulnerable with that mental health issue, is objectively harmful with respect to Mr. Jones. And Farmer establishes that a fact finder could conclude that a corrections officer knew of a risk of harm by the very fact that it was obvious. And here, it's obvious that exposing a mentally ill inmate repeatedly to pornographic materials to the point that he had memorized these materials, to the point that the materials were actually found in the mental health unit of the prison, and to the point where there was some type of quid pro quo scheme going on between these officers and Mr. Jones, because Mr. Jones was given special privileges, including a special job, he was permitted to have a radio and a television in his cell with him, and he was given access to the sergeant's office. And so all of this record evidence, when given, when looked at in the light most favorable to Mr. Jones, reveals that there was some sort of scheme going on between the corrections officers and Mr. Jones with respect to his repeated watching of this pornographic material. Ma'am, you say that it's obvious that exposure his exposure was harmful, but is there any evidence is there medical evidence or any other type of evidence, or is there any legal authority for the assertion that exposure repeated exposure to pornography is harmful? There is, Your Honor, yes. And it's in the record? And is it in the record? This, yeah, in our brief, Your Honor, this court has actually decided recently in Ricks v. Shover, and acknowledged that an Eighth Amendment violation can get, I'm sorry, prisoner sexual abuse can give rise to an Eighth Amendment violation. Because when there's no penological purpose to a corrections officer's actions, and it's undertaken to humiliate an inmate, it can give rise to the Eighth Amendment violation. Ricks was a sexual abuser. That's right, Your Honor. Does that make any difference? Ricks did hold that it is a fact-specific inquiry. However, Ricks notes that it goes without saying that objectively serious sexual contact would include ongoing harassment and abuse. And that's on page 19 of the Ricks opinion. And so here there's sufficient record evidence to support a scheme of ongoing harassment and abuse with Mr. Jones. And this court has held that that would be harm. And furthermore, the district court usurped the role of the fact-finder by determining that Mr. Jones or, I'm sorry, the corrections officers needed to know specifically of Mr. Jones' exact diagnosis in order to determine knowledge, where that's not the case because knowledge is a question of fact for the fact-finder. And therefore, Your Honors, we ask that this court vacate the corrections officers' motion for summary judgment and remand. Thank you very much. Thank you. Good afternoon. Good afternoon, and may it please the Court. My name is Derek Gillard, and I'm here on behalf of Mr. Jenkins. While I represent only him, today I will present the arguments that all of the corrections officers collectively have raised on appeal. For the purposes of today's argument, I will devote 13 minutes to my primary argument and two minutes to my rebuttal. Your Honors, it is our position that this Honorable Court should affirm the district court's ruling for eight reasons. First, Mr. Jones never pleaded in conditions of compliant claim in the complaint. Second, his pro se litigant status and his non-symptomatic mental health issues do not excuse his failure to plead the essential elements of this cause of action. Third, the assertion of a lack of deliberate indifference as an affirmative defense only applied to the specifically pleaded fair to protect claim. Fourth. Weren't your clients on notice of the allegations that this pro se plaintiff was bringing? No, Your Honor. Appellant raises two issues. First, he indicates that the corrections officers should be on notice because they raised this affirmative defense. Second, they should be on notice because of the grievance that he filed. Regretfully, neither argument is sufficient. With respect to pleading this particular defense, they raised it in connection with the failure to protect claim, which is what Mr. Jones had specifically pleaded in his complaint, not the unasserted conditions of confinement claim that he only brought several months after the fact in response to a motion for summary judgment. They also were not put on notice because with respect to the grievance, because first and foremost, the grievance did not deal with his conditions of confinement. Rather, it related to the purported unresponsiveness of the Pennsylvania Department of Corrections as it related to his PREA complaint. In fact, the grievance doesn't mention anything about the individual's mental health, any susceptibility or vulnerability to pornography, whether seeing pornography would aggravate his underlying mental health issues, or most importantly, that the corrections officers were aware of the particular risk to this individual. They were aware he was in a special treatment unit, correct? Your Honor, the corrections officers were aware that he was in a treatment unit. However, they had no knowledge of his underlying diagnosis, no knowledge of his medical history. They had no knowledge of any susceptibility or vulnerability to pornography. And most importantly, Mr. Jones has failed to point to any evidence in the record to support that contention. I mean, isn't there a certain level of common sense here that we have to take into consideration? Your Honor, to survive a motion for summary judgment and to meet one's evidentiary burden, the individual needs to come forward with actual evidence. Instead of producing actual evidence, Mr. Jones instead relies on conclusory speculation that these individuals knew, rather they should have known that he had some mental health issues or some susceptibility. Well, he was in the unit. They had to know there was a mental health issue. They knew that he had a mental health issue. He was not in the general population. That is correct, that he was not in the general population. However, there is nothing to suggest in the record that they were aware that if he were to have seen any pornographic material, that that would somehow result in some sort of exposure to this individual. In fact, when we look at the – in fact – So that's the standard? They have to be sophisticated enough in psychology or psychiatry to know that repeated exposure to pornography is going to be damaging? No, Your Honor. The standard, as the Supreme Court has articulated, is that these individuals had to have actual knowledge or that they needed to have actual awareness of this individual – of the risk to this particular individual. Here, Mr. Jones is asserting that it was enough for them to have constructive notice by virtue of his presence on that particular unit, which is not enough to meet his burden. What would be enough? What would be enough? That somebody actually sat these guys down and said, hey, listen, you've got to understand that Jones suffers from schizophrenia, so you shouldn't show him pornography. Is that what it would take? I think that Mr. Jones would have needed to present evidence that these individuals were aware of the risk that showing him any type of pornography would result in some sort of harm to him, which he has not done. He's not produced any evidence and he's not cited to any evidence in the record. How could anybody ever satisfy that burden? Seriously, I mean, that would require affirmative actions by the authorities to sit these guards down and say, hey, listen, this is the condition of each one of these inmates in the special housing unit, and these guys are more vulnerable to the following sorts of behavior, so please don't do it. Is that what you're saying? I am saying that these individuals – it's not enough to simply say that they should have known. It's that they actually needed to know that there was a risk. And in this particular instance, nothing indicated that they had that actual knowledge. So it's also our position that there is no evidence that a mentally ill inmate's exposure to pornography is objectively harmful or that the corrections officers were aware of any risks to Mr. Jones. What legitimate reasons would there be for the CO to show these sort of videos to the prisoners? Your Honor? The answer would be none. We're not aware of any peniological interests. But it's also important to recognize that for Mr. Jones to succeed on this claim, he not only needs to show that this happened, but that there was an objective harm and that they were aware of the risks to this individual, which he has failed to do based on the evidence. Your Honor, I think you're trying to skirt around the issue here. These are not Disney movies that they were showing to Jones. And this is not your local movie theater where they were showing him. This was a state correctional institution in Greene County. He was in the mental health unit. And it was pornography. Now, they knew that there was certainly some, that this was going to have some impact on a male inmate. The question... You can't ignore that. I think the question becomes whether they knew that showing this pornography to him, assuming that they did, which we can test, would have actually resulted in exposing him to an objective risk of harm. Well, what did they think it was going to do? It certainly was just entertainment. Your Honor, we don't have anything before us in the record that demonstrates that this actually occurred. That what occurred? That they had actually shown Mr. Jones the pornographic video except for his statements. That notwithstanding... The video is not in the record, but the record indicates that the district court found that the pornographic movies were shown, and they found pornographic movies in the prison. The district court had indicated that the videos were found and that Mr. Jones had knowledge of what was on the videos,  Well, he said he was showing the videos. Correct. But the real issue before the court, and what I want to draw the court's attention to, is whether Mr. Jones has even properly pleaded this claim, which he has not. In the complaint, Mr. Jones specifically and meticulously listed ten causes of action, but a conditions of confinement claim was not one of them. In fact, he never raised this issue until several months after he initiated this action. He didn't put a label on it? He did not put a label on it. But he put facts in that complaint that could constitute a conditions of confinement claim. Your Honor, it would be our submission that Mr. Jones also failed to plead the essential elements of this cause of action, even if he didn't use the label for this cause of action. To assert a conditions of confinement claim, a litigant must aver a deprivation of life's necessities and a deliberate indifference to a person's safety. Here, Mr. Jones' conditions of confinement claim, as he first articulated it in his brief in opposition, centers on the contention that his purported exposure to pornography was inhumane and manifested a deliberate indifference. According to him, he pleaded this claim or should be given deference with respect to it by virtue of his post-a litigant status, his passing reference to the Eighth Amendment, or his mental health. However, none of those arguments prevails. When we look at his complaint, it is bereft of any of the essential elements of the conditions of confinement claim. He never pleaded that he had any mental health issues. He never pleaded that he had any vulnerability or susceptibility to pornography. He never pleaded that seeing pornography would aggravate any mental health issues. He never pleaded that the corrections officers were aware of his mental health or a risk of aggravation. In fact, he readily concedes that he didn't even use the terms conditions of confinement or deliberate indifference in the complaint. With regard to his passing reference to the Eighth Amendment, that likewise doesn't warrant reversal of the trial court's decision. A litigant, even a pro se one, cannot simply assert an unidentifiable, generalized, and amorphous violation of the law. What Mr. Jones is doing is akin to asserting that a party committed some wrong, but not saying which one and not providing enough facts to identify, leading us to guess which is not sufficient under a federal pleading scheme. Importantly, we need to recognize that while the pleading rules are relaxed for pro se litigants, they still must set forth the essential elements and put the other party on notice of their claims, which Mr. Jones failed to do. In addition, Mr. Jones' reliance on his mental health issues is unavailing. The evidence of record demonstrates that he was not suffering under any impairments at or around the time that he prepared and filed the complaint, which was on August 8, 2016. The three medical health notes from August 2, 2016 until August 9, 2016, and the outpatient psychiatric note from August 18, 2016, show no signs of impairment. Mr. Jones, furthermore, has not pointed this Court to any evidence in the record to indicate that he was laboring under any impairment at that point in time. I think that it's also important to mention that Mr. Jones' argument is misguided because it glaringly ignores the fact that he had a team of two seasoned attorneys and several law students that represented him throughout these proceedings. If he wanted to prosecute this particular claim, his counsel could have and should have amended the complaint to include it. For those reasons, summary judgment was also appropriate. I also would like to address our third submission regarding the notice issue. I've already indicated that the corrections officers were not on notice by virtue of asserting the affirmative defense and by virtue of the grievance. But it's also important for the Court to recognize that Mr. Jones never raised this issue before the trial court. Therefore, he has waived it on appeal. Why weren't you on notice by asserting the defense? Because in the original complaint, Mr. Jones specifically listed a failure to protect claim, one of the essential elements of a failure to protect claim is deliberate indifference. When we had pleaded that affirmative defense, it was in response to the specifically pleaded failure to protect claim, not the unasserted conditions of confinement claim. Your Honors, it's also our position that the – that even if Mr. Jones asserted the conditions of confinement claim, the district court nonetheless properly entered summary judgment because he hasn't presented any evidence to establish the essential elements of this cause of action. With regard to the first element, there is nothing in the record to show that a mentally ill inmate's exposure to pornography is objectively harmful. Mr. Jones has not produced. Are you suggesting he needed an expert to put that – to get over that hump? I'm not saying that we – that he needed to provide only expert testimony or an expert opinion with respect to that, but he needed to provide some evidence to that position. Here, he hasn't provided any medical records, any expert opinions, any scholarly opinion. This case differs from the Williams decision where the court recognized there was a breadth of literature and there were studies that actually talked about the effects of the conduct in question. Here, Mr. Jones presented no similar literature and no similar studies to actually meet this burden. I think that it's also important for the court to recognize that the medical records that are in the record demonstrate that Mr. Jones actually did not have any mental distress from January 2016 until March of 2016, the period of time in which he was purportedly watching the pornography. In fact, those medical records indicate that he was in a good mood and was euphemic. In the absence of any evidence, Mr. Jones instead relies on conjecture. But as this Court has noted, conjecture is not enough to defeat summary judgment. With regard to the second element, there's nothing in the record to show that the correction officers were actually aware of the substantial risk. As I already mentioned, the thrust of Mr. Jones' argument is that these individuals should have known of the risk and should have known about his mental health because of his presence on the DTU. And isn't that something a jury could come to the conclusion? Your Honor, here there is nothing to indicate that the individuals had actual knowledge. Therefore, the district court had appropriately granted summary judgment on this point. He would need to have sufficient evidence to get this question before a jury, which he did not at the time of summary judgment. May I finish my final thought? Sure. It's also important to recognize that what Mr. Jones is asking this Court to do is the exact opposite of what the Farmer Court instructed us to do. We cannot rely on constructive knowledge. We need to have actual knowledge. Thank you, sir. May it please the Court, I have two points that I would like to make on rebuttal. First, regarding the notice, when Mr. Jones brought his allegations forward to the prison counselor, all of the COs were not only made aware of Mr. Jones' allegations and what he was alleging against each of them, they were all questioned and asked to give statements regarding this. They knew what was going on, and the prison, in their investigation, found that they were violating prison policies and why two were suspended and one was dismissed. Further knowledge was, as the appellees state, given through their individual answers to his complaint when they denied acting with any deliberate indifference towards Mr. Jones, which just goes to show they were on notice of this Eighth Amendment claim and their actions with deliberate indifference towards Mr. Jones, and that these claims, they allege that this was from his mention of failure to protect in his complaint. When you look at that with the pro se deference, under the Eighth Amendment, it's the branches of the theories that we're alleging here, they're one and the same almost. We're not in two different planets here. They knew what was going on, and they knew that they were going to deny their actions with deliberate indifference. And so the articulation of the inhumane conditions of confinement later in his brief in response to summary judgment does not prejudice the appellees or the defenses they've put forward to such a claim since they have not fundamentally or materially changed since the beginning of litigation. And for these reasons, Mr. Jones's claim should not be barred, and the case should be remanded for trial. Thank you. Thank you very much. Thank you. Mr. Rowe and Ms. Winslow, Ms. McCrossin, thank you for taking this case on a pro bono basis. It's greatly appreciated. Thank you, Your Honor. This is not the way it works. I understood you to say you were going to present your rebuttal argument when you approached the podium the first time. Only they get rebuttal. We'll just have to anticipate what your rebuttal would have been. Thank you, Your Honor. We will hold this case under advisement and get back to you shortly. Thank you.